1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| DIANNE C. TISON, an individual, | CASE NO. 19-5353 RJB-DWC |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| v. | |
| FIRST AMERICAN TITLE COMPANY, a foreign corporation, | |
| Defendant. | |

11
12
13
14
15
16

This matter comes before the Court on Defendant First American Title Insurance

17 Company's ("First American") Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's First

18 Amended Complaint (Dkt. 17), Requests for Judicial Notice (Dkts. 11 and 18) and motion to

19 strike the Plaintiff's declaration (Dkt. 22). The Court has considered the pleadings filed in

20 support of and in opposition to the motions and requests and the file herein.

21 In this diversity case, the Plaintiff asserts that First American failed to "lawfully prepare,

22 execute, and record" a July 2011 quit claim deed which resulted in litigation over the ownership

23 of real property between the Plaintiff and the estate of the Plaintiff's mother. Dkt. 14. The

24 Plaintiff makes claims against First American for negligence, professional negligence, legal

malpractice, and breach of contract. *Id.* First American, who maintains that it was incorrectly sued as First American Title Company, now moves to dismiss the case for failure to state a claim. Dkt. 17. For the reasons provided below, the motion to dismiss (Dkt. 17) should be granted as to the Plaintiff's contract claim, and denied, in all other respects; First American's requests for judicial notice (Dkts 11 and 18) should be granted, in part, and denied in part, and the motion to strike (Dkt. 22) should be denied as moot.

## I.    <u>PROCEDURAL HISTORY, REQUESTS FOR JUDICIAL NOTICE, FACTS, AND PENDING MOTION</u>

### A. PROCEDURAL HISTORY

Originally filed on March 29, 2019, in Pierce County, Washington Superior Court, this case was removed to this Court on April 29, 2019. Dkt. 1. On May 6, 2019, First American filed a motion to dismiss (Dkt. 10) and a request for judicial notice regarding the motion to dismiss (Dkt. 11).

The Plaintiff filed an Amended Complaint (Dkt. 14) and First American withdrew its motion to dismiss.

On June 3, 2019, First American filed the instant motion to dismiss (Dkt. 17) and a second request for judicial notice (Dkt. 18).

### B. REQUESTS FOR JUDICIAL NOTICE AND DECISION ON MOTION TO STRIKE

In reviewing a motion to dismiss for failure to state a claim as is the case here, the court is generally limited to review of "the face of the complaint, materials incorporated into the complaint by reference," and matters of which judicial notice may be taken. *In re Rigel Pharmaceuticals, Inc. Securities Litigation*, 697 F.3d 869, 876 (9th Cir. 2012). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a

motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Id.* (*internal quotations omitted*). Pursuant Fed. R. Evid. 201 (b), "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In the first request for judicial notice, First American asks the Court to take judicial notice of: (1) a June 25, 2004 statutory warranty deed between Kenneth and Diana Frick and William and Catherine Johnson, (2) escrow instructions dated February 2, 2017, (3) Dianne C. Tison's loan application dated February 2, 2017, (4) a quit claim deed dated February 24, 2011, (5) a quit claim deed dated July 5, 2011, (6) a court docket sheet for *Estate of Catherine L. Johnson,* Pierce County, Washington Superior Court case 16-4-01044-2, (7) Last Will and Testament of Catherine L. Johnson dated June 14, 2016, (8) a court docket sheet for *In re Estate of Catherine L. Johnson,* Pierce County, Washington Superior Court case 17-4-02140-0, (9) an Amended Petition for Judicial Proceedings in dated January 24, 2018 in *In re Estate of Catherine L. Johnson,* Pierce County, Washington Superior Court case 17-4-02140-0, and (10) a loan application for the Johnsons dated February 2, 2011. Dkt. 11. In the second request for judicial notice, First American requests that the Court take notice of (11) a Petition for Order Probating Will and Appointing Personal Representative dated September 14, 2016 filed in *Estate of Catherine L. Johnson,* Pierce County, Washington Superior Court case 16-4-01044-2. Dkt. 18.

First American's requests for judicial notice (Dkts. 11 and 18) should be granted as to the following: (1) the June 25, 2004 statutory warranty deed between Kenneth and Diana Frick and William and Catherine Johnson (Dkt. 11-1, at 2-4), (2) the quit claim deed dated February 24, 2011 (Dkt. 11-1, at 15-16), (3) the quit claim deed dated July 5, 2011 (Dkt. 11-1, at 18-19)("July

2011 quit claim deed"), (4) a court docket sheet for *Estate of Catherine L. Johnson,* Pierce

County, Washington Superior Court case 16-4-01044-2 (Dkt. 11-1, at 21-22), (5) Petition for

Order Probating Will and Appointing Personal Representative dated September 14, 2016 filed in

*Estate of Catherine L. Johnson,* Pierce County, Washington Superior Court case 16-4-01044-2,

(Dkt. 18, at 6-9) (6) a court docket sheet for *In re Estate of Catherine L. Johnson,* Pierce County,

Washington Superior Court case 17-4-02140-0 (Dkt. 11-1, at 32-34), (7) the Amended Petition

for Judicial Proceedings in dated January 24, 2018 filed in *In re Estate of Catherine L. Johnson,*

Pierce County, Washington Superior Court case 17-4-02140-0 (Dkt. 11-1, at 36-41), and (8) the

Last Will and Testament of Catherine L. Johnson dated June 14, 2016 (Dkt. 11-1, at 24-30).

Each of these are public records and the facts noticed by the undersigned are "not subject to

reasonable dispute." *In re Rigel,* at 876.

The request should be denied as to the escrow instructions dated February 2, 2017 (Dkt.

11-1, at 6-8), Dianne C. Tison's loan application dated February 2, 2017 (Dkt. 11-1, at 10-13),

and a loan application for the Johnsons dated February 2, 2011 (Dkt. 11-1, at 43-46). The

escrow instructions and loan applications are not "matters of public record" and it is not clear

that the facts First American requests be noticed in them are "not subject to reasonable dispute."

*In re Rigel,* at 876. In particular, First American's request that the Court take judicial notice of

the escrow instructions, maintaining that they are referred to in the Amended Complaint, is

problematic. Dkt. 11. The Plaintiff points out that First American failed to include all the

instructions and included her own declaration, pointing to additional instructions and disclosures.

Dkt. 21. First American moved to strike her declaration, arguing that she "should not be

permitted to force a summary judgment proceeding by filing her declaration." Dkt. 22. The

Court will not take judicial notice of the escrow instructions or loan applications. Accordingly, First American's motion to strike the Plaintiff's declaration (Dkt. 22) should be denied as moot.

**C. FACTS**

The following facts are taken from the Amended Complaint, materials incorporated into the Amended Complaint by reference, and those facts which are properly judicially noticed. *In re Rigel,* at 876.

On June 25, 2004, William Johnson and his wife, Catherine L. Johnson, acquired real property commonly known as 5528 Broadview Avenue, Tacoma, Washington by statutory warranty deed. Dkts. 14, at 2 and 11-1, at 2-4. According to the Amended Complaint, the Plaintiff, Dianne C. Tison, who is the Johnsons' daughter, made the down payment on the property and continued to make the mortgage payments. *Id.* The Plaintiff and her parents intended for the home to become the Plaintiff's after her parents' deaths. *Id.* They further agreed that Mr. and Mrs. Johnson would remain on the title because they lived in the home and were entitled to a property tax exemption due to their age. *Id.*

The First Amended Complaint alleges that in February 2011, the parties refinanced the property with Bank of America. Dkt. 14, at 2. Bank of America required a co-signor; the Plaintiff agreed to be the co-signor because she was already paying the mortgage and she and her parents intended for her to eventually be the owner of the property. *Id.,* at 2-3. The Plaintiff asserts that the parties verbally told Bank of America that they wanted to keep Mr. and Mrs. Johnson on the property for the tax exemption, "but for all intents and purposes, this was Ms. Tison's home, as she had been paying for it and would continue to pay for it." *Id.*, at 3.

The First Amended Complaint maintains that First American was contracted to provide title, escrow and closing services for the refinance. Dkt. 14, at 3. First American employee,

Julie Bruso, a Limited Practice Officer under Washington law, was the closing officer. *Id.* As part of the refinance, Mr. and Mrs. Johnson executed a quit claim deed conveying their interest in the property to themselves and the Plaintiff. *Id.* First American prepared the quit claim deed which did not list Mr. and Mrs. Johnson and the Plaintiff as "joint tenants with right of survivorship." *Id.* The Plaintiff asserts that "the parties were unaware of this error at the time of executing the quit claim deed, as they had been relying on Bank of America and First American to provide the appropriate documents to effectuate their intent." *Id.* The quit claim deed was recorded on February 24, 2011 with the Pierce County Auditor, as number 201102240374. *Id.* and Dkt. 11-1, at 15-16.

According to the First Amended Complaint, "[s]everal months after the quit claim deed was recorded, either Bank of America or First American realized there had been a mistake with the quit claim deed, as it did not reflect the intent of the parties." Dkt. 14, at 3-4. First American contacted the Plaintiff "to express that there needed to be a revision to the deed and that a First American representative would be coming to the [property] to have everyone execute the document." *Id.*

According to the Amended Complaint, the Johnsons, the Plaintiff and a First American representative (who is not named in the Amended Complaint) met. Dkt. 14, at 4. The First American representative allegedly presented the parties with a copy of the already recorded quit claim deed. *Id.* The copy included a handwritten correction of "joint estate with rights of survivorship." *Id.* The First American representative "then requested that the parties all initial next to this handwritten statement, which they did." *Id.* The Amended Complaint alleges that the parties "did not sign the revised [quit claim] deed," and First American failed to notarize it. *Id.* It was recorded on July 5, 2011 with Pierce County, Washington Auditor, as number

201107050400.  *Id.* and Dkt. 11-1, at 18.  The July 2011 quit claim deed also included a typewritten line which provided, "*Re-recorded to correct vesting" which was not initialed.  Dkt. 11-1, at 18.

After this July 2011 quit claim deed was recorded, Mr. Johnson passed away.  Dkt. 14, at 4.  After he died, Mrs. Johnson passed away on January 3, 2016.  *Id.*

On September 14, 2016, Ronald J. Heintzman filed a probate proceeding for the Estate of Catherine Johnson in Pierce County, Washington Superior Court case number 16-4-01044-2.  Dkts. 14, at 4 and 11-1, at 21.  The Amended Complaint asserts that in that case, Mr. Heintzman challenged the July 2011 quit claim deed, asserting that because it had not been notarized it was ineffective to make the Plaintiff the sole owner of the property.  Dkt. 14, at 4-5.  In the Petition for Order Probating Will and Appointing Personal Representative, Petitioner, Mr. Heintzman maintained that the Plaintiff should not be appointed the personal representative arguing that:

> On February 3, 2011, William T. Johnson and Catherine L. Johnson, husband and wife, executed a quit claim deed transferring the real property in question to the Johnsons and Dianne C. Tison as tenants in common. Aforesaid deed was recorded on February 24, 2011, Pierce County recording number 201102240374. Unbeknownst to petitioner as well as the other heirs of the estate of Catherine L. Johnson, the deed was re-recorded on July 5, 2011 with a handwritten notation attempting to change ownership from tenants in common by adding language "joint estate with right of survivorship." The modified deed was never signed by the parties or executed in front of a notary. The original purpose of adding Dianne C. Tison to the deed was to prevent an estranged daughter from gaining control of the property. Dianne C. Tison originally claimed to the family she bought the house but is now claiming full ownership of the house based on the added language to the deed and has failed to provide any documents to verify what interest she has in the home other than the deed.
>
> Petitioner also believes that Dianne C. Tison used her influence and close proximity to decedent to transfer liquid assets and other assets the decedent held into Dianne's name. . .
>
> In early April of 2016, Dianne C. Tison claimed she was ready to pay the beneficiaries and close the estate. The petitioner advised her to hold off paying anything out, but Dianne then wrote checks to Dyrald Heintzman and herself in

the amount of $5,429.24 each. In August 2016, the petitioner requested that Dianne C. Tison pay petitioner as well as the other beneficiaries of the estate what she determined was owed to the beneficiaries back in April of 2016. She refused claiming that she was reimbursing herself for funeral expenses, for expenditures dating back to 2004, her legal fees and that there was nothing left to pay the other beneficiaries.

Dkt. 18, at 7.

On December 7, 2017, Tanya Pemberton, the appointed personal representative for the Estate of Catherine Johnson, commenced an action pursuant to Washington's Trust and Estate Dispute Resolution Act, RCW 11.96A *et. seq*., ("TEDRA action") in Pierce County, Washington Superior Court, case number 17-4-02140-0. Dkt. 14, at 5 and 11-1, at 32. According to the Amended Complaint, in the TEDRA action, the Estate alleged that the Plaintiff authored the July 2011 quit claim deed and forged her parents' initials. *Id.* The Plaintiff maintains in the Amended Complaint that, because the July 2011 quit claim deed "had neither been signed nor notarized, an issue of material fact arose as to the validity of the revised deed. Also, pursuant the Washington's Deadman's Statute, [RCW 5.60.030] Ms. Tison was prohibited from testifying that her parents in fact initiated the revised deed." Dkt. 14, at 5. The Plaintiff maintains that she was in a "legally deficient position to claim outright ownership" of the property. *Id.* She participated in two mediations with the Estate, and finally, after a year, agreed to pay the Estate of Catherine Johnson $75,000 in settlement. *Id.* The Plaintiff alleges that she incurred significant attorney's fees and expenses during the TEDRA case. *Id.*

The Plaintiff asserts claims for negligence, professional negligence, legal malpractice and breach of contract. Dkt. 14, at 6-7. She seeks damages, costs, and attorneys' fees. *Id.,* at 8.

**D. PENDING MOTION**

First American argues that the Amended Complaint should be dismissed, without leave to amend, arguing that (1) First American complied with the escrow instructions and breached no

duty in negligence or under the contract, (2) the July 2011 quit claim deed did not proximately cause any damages available under the contract or in negligence, and (3) her claims are barred by the statutes of limitation.  Dkts. 17 and 22.

The Plaintiff opposes the motion, and argues that she has alleged sufficient facts that First American breached a duty of care and was negligent and breached the contract, (2) the July 2011 quit claim deed proximately cause her damages including the settlement, attorneys' fees, and expenses related to the litigation, and (3) her claims are not barred by the statutes of limitation because she was not damaged until the Estate brought suit against her.  Dkt. 20.

**E.  ORGANIZATION OF OPINION**

This opinion will first provide the standard for a motion to dismiss, the standard for application of Washington law, Washington's elements for claims of negligence and breach of contract claims, then discussion of whether the Amended Complaint should be dismissed for failure to state a claim because of lack of a breach of a duty under either negligence or contract or lack of proximate cause of damages to the Plaintiff, and lastly, whether Plaintiff's claims are barred by Washington's statutes of limitations.

**II.     DISCUSSION**

**A.  STANDARD FOR MOTION TO DISMISS**

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

## B.  WASHINGTON SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) *(internal quotation marks omitted)*).

## C.  GENERAL ELEMENTS FOR CLAIMS OF NEGLIGENCE AND BREACH OF CONTRACT

The Plaintiff asserts negligence claims and a breach of contract claim. In Washington, the elements of negligence are duty, breach, causation, and damages. *Keller v. City of Spokane,* 146 Wn.2d 237, 343 (2002). To assert a claim for breach of contract, a plaintiff must allege the existence of a valid contract, a breach of the contract, and damages. *See Meyers v. State*, 152 Wash. App. 823, 827, 828 (2009).

## D.  NEGLIGENCE DUTY AND BREACH OF CONTRACT

First American asserts that it did not breach a duty for purposes of negligence or breach a provision in the contract between First American and the Johnsons and the Plaintiff because it followed the escrow instructions. Dkt. 17.

The Court should not grant First American's motion to dismiss (Dkt. 17) on this ground. Duty for the purposes of negligence is the duty to exercise reasonable care, "or, alternatively phrased, the duty to exercise such care as a reasonable person would exercise under the same or similar circumstances." *Mathis v. Ammons*, 84 Wash. App. 411, 416, 928 P.2d 431, 434 (1996). Under Washington law, generally, an escrow agent's duties and limitations are defined by their instructions. *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 148 Wn.2d 654, 663 (2003)(*internal citation omitted*). "The tasks in the instructions must be undertaken with ordinary skill and diligence, and due or reasonable care. In addition, the escrow agent, as fiduciary to all parties to the escrow, must conduct the affairs with which it is entrusted with scrupulous honesty, skill, and diligence." *Id.* (*internal quotation marks and citations omitted*).

The escrow instructions are not subject to judicial notice at this time. Further, the Amended Complaint maintains that a Limited Practice Officer under Washington law was involved with the preparation of the documents. Whether her duty to the Plaintiff is restricted to the escrow instructions is not clear at this time. The Plaintiff has alleged sufficient facts that, if believed, constitute a breach of a duty owed her for purposes of a negligence claim.

Further, it is not yet clear that the escrow instructions are the sole source of the "contract" to which the Plaintiff refers in the Amended Complaint. The Plaintiff has alleged sufficient facts from which to conclude that the parties had a contract and that First American breached that contract.

**E. PROXIMATE CAUSE OF DAMAGES FOR BOTH NEGLIGENCE AND BREACH OF CONTRACT CLAIMS**

In order to recover under claims of negligence, a plaintiff must show that their damages were proximately caused by the breach of a duty owed to the plaintiff. *Wuthrich v. King County,* 185 Wash.2d 19, 25 (2016). Likewise, "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *C 1031 Properties, Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 33–34 (2013)(*internal quotation marks and citation omitted*)( ).

"Proximate cause has two elements: cause in fact and legal cause." *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 436–37 (2016)(*internal citation omitted*). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Id.,* at 437. "As a determination of what actually occurred, cause in fact is generally left to the jury." *Wuthrich,* at 28. "Legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *N.L.,* at 437 (*internal quotation marks and citations omitted*). There may be more than one proximate cause of an injury under Washington law. *Id.*

First American asserts that the case should be dismissed because the July 2011 quit claim deed did not proximately cause the Plaintiff's damages. Dkts. 17 and 22. It maintains that an unacknowledged deed is valid between the grantor and grantee and their heirs. *Id.* First American asserts that the Johnson's initials are sufficient to "sign" the quit claim deed. *Id.* It asserts that the Deadman's Statute did not bar proof of the deed's validity. *Id.* It maintains that the Catherine Johnson's Estate's challenge to the July 2011 quit claim deed did not cause the Plaintiff to be required to pay the settlement or to incur expenses related to the litigation. *Id.*

Under Washington law, "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgement of deeds." RCW 64.04.020.

First American's motion to dismiss because the Plaintiff has failed to allege sufficient proximate cause (Dkt. 17) should be denied. While Washington courts have recognized an exception to the acknowledgment requirement in RCW 64.04.020, where the dispute is between the grantor and grantee and "where the controversy is between the heirs of the grantor and grantee," *Ockfen v. Ockfen,* 35 Wash.2d 439, 441 (1950)(unacknowledged deed is still valid between grantor and grantee and between heirs of grantor and grantee); *See OneWest Bank, FSB v. Erickson*, 185 Wn.2d 43, 71 (2016), the cases cited do not deal with situations where the validity of the signatures on the deed is also contested. The purpose of the acknowledgement requirement is to ensure the validity of the signatures on the deed. First American's argument that initials are sufficient to constitute a "signature" under the statute is equally unavailing. Even if that were true, the use of initials create a situation where it is more difficult to determine the validity of the "signature." Moreover, First National does not cite any Washington case law to support its argument – but turns to the Uniform Commercial Code, the law on wills, and out of state cases. The purpose of RCW 64.04.020 to is avoiding situations like the one presented in this case. Considering all the circumstances (that the July 2011 quit claim deed was alleged to have been created by First American, it was unacknowledged, the "signatures" were, at best, initials, it was the old deed with handwritten and typed changes) it cannot be said that First American's actions did not proximately cause Plaintiff's damage. Whether or not the Deadman's Statute would have prevented the Plaintiff from testifying or whether she could have called a witness from First American to establish the signatures' validity, or whether or not she would

have ultimately prevailed, does not change the fact that she incurred attorneys' fees and other expenses associated with defending the lawsuit with the Estate. The facts asserted in the Amended Complaint are sufficient, if believed, to show that First American's breach of the standard of care, and breach of the parties' contract, proximately caused the Plaintiff damage.

### F. STATUTES OF LIMITATION

The statute of limitations on a negligence action in Washington is three years. RCW 4.16.080. For a breach of a written contract, it is six years. RCW 4.16.040(1).

First American argues that the Amended Complaint should be dismissed because the claims are barred by the statutes of limitations. Dkts. 17 and 22. It maintains that the events surrounding the July 2011 quit claim deed occurred more than seven years before the complaint was filed in March of 2019. *Id.* The Plaintiff argues that under Washington's discovery rule, the statutes of limitations were tolled until the Estate filed suit against her. Dkt. 20.

"Statutes of limitations do not begin to run until a cause of action accrues. Usually, a cause of action accrues when the party has the right to apply to a court for relief." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575 (2006), *as corrected* (Nov. 15, 2006)(*internal citations omitted*). A discovery rule of accrual is applied - "the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of a cause of action." *Id.* The discovery rule "merely tolls the running of the statute of limitations until the plaintiff has knowledge of the 'facts' which give rise to the cause of action; it does not require knowledge of the existence of a legal cause of action itself." *Cox v. Oasis Physical Therapy, PLLC*, 153 Wash. App. 176, 189-90, 222 P.3d 119, 125-26 (2009)(*quoting Richardson v. Denend*, 59 Wash.App. 92, 95–96, (1990)). "The key consideration under the discovery rule is the factual, as opposed to the legal, basis of the cause of action." *Id.* (*quoting Adcox v.*

*Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wash. 2d 15, 35 (1993). "In most circumstances, a cause of action accrues when its holder has the right to apply to a court for relief." *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219 (1975).

First American's motion to dismiss the Plaintiff's negligence claims based on the statute of limitations (Dkt. 17) should be denied. "Actual loss or damage is an essential element in the formulation of the traditional elements necessary for a cause of action in negligence." *Gazija,* at 219. The Plaintiff did not suffer any damage which was proximately caused by First American until she was sued by the Estate. She had no "right to apply to a court for relief" until then. *Gazija,* at 219. Further, if the allegations in the Amended Complaint are credited, she was unaware, or in the exercise of reasonable diligence would not have discovered, all facts which would given rise to a cause of action under negligence.

First American's motion to dismiss the Plaintiff's breach of contract claim based on the statute of limitations (Dkt. 17) should be granted. Usually, "a general breach of contract claim accrues on the date of the breach, not discovery of the breach." *Schreiner Farms, Inc. v. American Tower, Inc.,* 173 Wash. App. 154, 160 (2013)(*internal citations omitted*). The Washington Supreme Court adopted an exception to that rule and held that the discovery rule applies to contract claims involving latent construction defects. *1000 Virginia,* at 579. "[I]n contract actions, the claim accrues on breach absent an exception such as that created for construction contracts" in *1000 Virginia. Kinney v. Cook*, 150 Wn. App. 187, 193 (2009). The contract claims here do not involve latent construction defects. The Plaintiff points to no Washington authority for extending the discovery rule for a claim under contracts that would apply to this case. The statute of limitation bars the Plaintiff's breach of contract claim and that claim should be dismissed.

# III.    ORDER

Therefore, it is hereby **ORDERED** that:

- First American's Requests for Judicial Notice (Dkts. 11 and 18) **ARE GRANTED, IN PART**, and **DENIED, IN PART,** as set forth herein;

- First American's motion to strike the Plaintiff's declaration (Dkt. 22) **IS DENIED AS MOOT**,

- First American's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 17) **IS GRANTED, IN PART**, as to Plaintiff's breach of contract claim, and **DENIED IN ALL OTHER RESPECTS**; and

- The Plaintiff's claim for breach of contract **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 2nd day of July, 2019.

Robert J. Bryan

ROBERT J. BRYAN
United States District Judge